**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VFS Leasing Company, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Silverado Stages Incorporated, et al.,<br><br>Defendants. | No. CV-18-02894-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendants James and Sharron Galusha's motion to dismiss Count IV of the first amended complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1] (Doc. 32.) The motion is fully briefed.[2] (Docs. 37, 43.) For the following reasons, the Galushas' motion is granted.

**I. Background**

---

[1] Defendants Silverado Stages, Inc., Silverado Stages CC, LLC, Silverado Stages NC, LLC, Silverado Stages SC, LLC, Silverado Stages NV, LLC, Silverado Stages AZ, LLC, Silverado Charter Services, LLC, and Michelangelo Leasing, LLC (collectively, the "Bankruptcy Defendants") filed bankruptcy on October 5, 2018 (the "Bankruptcy"). As a result, Plaintiffs filed a Notice of Voluntary Partial Dismissal of (1) the Complaint as Against Bankrupt Defendants Without Prejudice; and (2) the Fraud Claim as Against All Defendants Except [the Galushas], which dismissed the Bankruptcy Defendants without prejudice and dismissed the fraud claim against Defendant Silverado Stages WY, LLC. (Doc. 28.) Accordingly, this motion is filed on behalf of the Galushas individually and in their capacities as trustees of the Jim and Sharron Galusha Revocable Trust Dated August 9, 2012 only.

[2] The Galushas' request for oral argument is denied because oral argument will not aid in the resolution of this matter. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b).

Beginning in March 2013, Plaintiffs VFS Leasing Co. and Volvo Financial Services, a division of VFS US LLC, extended credit to Michelangelo Leasing, Inc. ("Michelangelo") for equipment under a series of financial agreements. (Doc. 11 ¶¶ 18-32.) In 2017, Silverado Stages, Inc. ("Silverado") and the Galushas—Silverado's majority shareholders—informed Plaintiffs that they intended to assume Michelangelo's obligations and refinance the debt ("Michelangelo Debt"). (¶ 33.) At the same time, Silverado and the Galushas also sought to finance nineteen additional pieces of equipment from Plaintiffs ("Additional Credit," together with the Michelangelo Debt, the "Credit Request"). (*Id.*)

For Plaintiffs to evaluate the Credit Request, Silverado and the Galushas were required to provide certain financial information, including a Personal Financial Statement ("PFS"). (¶ 34.) The Galushas December 31, 2016 PFS identified as assets their personal residence and three other real estate properties they owned as tenants in common. (¶¶ 35, 37.) The PFS also represented that they held assets in trust as "The Jim & Sharron Galusha Revocable Trust," but did not individually identify specific assets. (¶ 38.) The Galushas and the Bankruptcy Defendants executed continuing guaranties. (¶¶ 47-48.) Based in part on the Galushas representation of their personal assets in the PFS, Plaintiffs granted the Credit Request. (¶ 39.)

On January 6, 2017, Silverado executed an assignment under which they agreed to be responsible for "all obligations and performance of Michelangelo Debt[.]" (¶ 40.) Beginning in June 2017, Silverado entered into a series of financial schedules under which Plaintiffs agreed to extend Additional Credit. (¶¶ 41-44.) In 2017 and 2018, the parties also entered into Modification Agreements to modify payments due on the Michelangelo Debt. (¶¶ 45-46.) Despite the parties' modification efforts, Silverado defaulted on the agreements. (¶ 55-58.)

In September 2018, Plaintiffs filed this action against Silverado, the Galushas, and Bankruptcy Defendants for failure to remit payments to Plaintiffs. (¶ 55.) Plaintiffs allege breach of leases, loans, and continuing guaranties, in addition to common law fraud and replevin. (¶¶ 64-96.) The Galushas now move to dismiss Count IV (fraud) of Plaintiffs'

complaint under Fed. R. Civ. P. 9(b) and 12(b)(6).  (Doc. 32.)

**II. Legal Standards**

    **A.  Fed. R. Civ. P. 12(b)(6)**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

    **B.  Fed. R. Civ. P. 9(b)**

Rule 9(b) requires allegations of fraud to be pled with particularity.  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong."  *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001).  The allegations must include "the who, what, when, where, and how" of the misconduct charged and "must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**III. Discussion**

The Galushas argue that Plaintiffs' fraud claim should be dismissed because it is barred by the economic loss rule and because Plaintiffs have not specifically plead the necessary elements.

### A. Economic Loss Rule

The economic loss rule, when applicable, acts to limit a party to contractual remedies for economic losses absent physical injury to people or other property. *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664, 667 (Ariz. 2010). The doctrine is designed to honor parties' expectations by limiting recovery to contract remedies "for loss of the benefit of the bargain." *Id.* at 671. Holding contractual parties to agreed-upon remedies is appropriate when, as contract law presumes is the case, parties are on equal footing and have had an opportunity during negotiations to allocate risks. *Id.* at 669.

Although "the Arizona Supreme Court's ruling fell short of expressly declaring that the rule only applies in product liability and construction defect cases . . . there is little to support that the Arizona courts intended the doctrine to apply outside these contexts." *Firetrace USA, LLC v. Jeslcard*, 800 F. Supp. 2d 1042, 1052 (D. Ariz. 2010); *see also Giles Const., Inc. v. Commercial Fed. Bank*, No. Civ 04-258-TUC-CKJ, 2006 WL 2711501, at *9-10 (D. Ariz. Sept. 21, 2016) ("Other than construction and product defect cases, however, the Arizona courts have not applied the economic loss rule as a bar to the recovery of economic damages in tort cases. To the contrary, Arizona courts have issued numerous decisions permitting the recovery of purely economic losses in tort actions.").

Indeed, a formulation of the economic loss rule that eliminates recovery under all tort theories is "overly broad." *Flagstaff Affordable Hous.,* 223 P.3d at 667. "[I]n the case of fraud, a tort specifically designed to remedy economic harm, the doctrine is especially inappropriate." *Wilson v. GMAC Mortg., LLC*, No. 11-CV-546-PHX-FJM, 2011 WL 4101668, at *2 (D. Ariz. Sept. 14, 2011); *see also KD & KD Enterprises*, No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec. 27, 2006) ("[D]efendants seek to extend the economic loss inquiry to all torts, even those, like fraud, specifically designed for economic harm. This logical leap would basically eviscerate the tort of fraud, for the only damages one has in fraud are economic. The law cannot be so twisted."). "When fraudulent conduct infects contract negotiations, the presumption that the parties engaged

in an equal negotiation evaporates. Thus, it is unreasonable to restrict a party to contractual liability when fraud created an unequal bargaining environment." *Wilson*, 2011 WL 4101668, at *2; *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880 (9th Cir. 2007) (Nevada economic loss doctrine did not bar claims for fraud); *Jes Solar Co., Ltd. v. Matinee Energy, Inc.*, No. 12-CV-626-TUC-DCB, 2015 WL 10943562, at *4-5 (D. Ariz. Nov. 2, 2015) (declining to apply economic loss rule to fraudulent misrepresentation claim).

Despite these authorities, the Galushas contend that the economic loss rule requires dismissal of Plaintiffs' fraud claim. The Galushas rely on *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 150 (Ariz. Ct. App. 2011) and *Maricopa Inv. Team, LLC v. Johnson Valley Partners LP*, No. 1 CA-CV 12-0047, 2012 WL 5894849, at *1-3 (Ariz. Ct. App. 2012), in which claims for fraud and intentional misrepresentation were found to be barred by the economic loss rule. The economic loss rule, however "may vary in its application depending on context-specific policy considerations." *Flagstaff Affordable Hous.*, 223 P.3d at 669. Courts should consider the underlying policies of tort and contract law when determining whether the rule applies to a particular case. Here, the Court finds that the underlying policies of tort and contract law do not support application of the economic loss rule in this context. *KD & KD Enters., LLC v. Touch Automation, LLC*, No. 06-CV-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec. 27, 2006) (holding that underlying policies prohibit application of economic loss rule to fraudulent representations made in contracting). The Court therefore will not dismiss Count IV on this basis.

**B. Elements of Fraud**

Under Arizona law, to state a plausible fraud claim a plaintiff must plead the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. 1978). The Galushas argue that Plaintiffs have not specified which representations are false or misleading and why. As a result, the Galushas contend that Plaintiffs necessarily have not adequately pled the remaining elements of a fraud claim because, without identifying specific misrepresentations, it is not possible to assess factors like materiality, reasonable reliance, or whether the Galushas knew the information was false. On this point, the Court agrees.

Plaintiffs generally allege that: (1) the Galushas sought the Credit Request from Plaintiffs; (2) Plaintiffs informed Silverado and the Galushas that they needed to provide financial information to evaluate the Credit Request; (3) the Galushas produced a PFS that listed assets held as tenants in common and identified that they owned assets in trust; (4) based on the assets listed in the Galushas' PFS, Plaintiffs granted the Credit Request; and (5) in January 2017, Silverado agreed to assume obligations and performance of the Michelangelo Debt. (Doc. 11 ¶¶ 33-40.) With respect to Count IV of the complaint, Plaintiffs further allege that: (1) the Galushas provided Plaintiffs with the PFS knowing it misrepresented assets; (2) Plaintiffs, without knowledge of the misrepresented assets, relied upon the PFS when granting the Credit Request; (3) the Galushas misrepresentations were material; (4) the Galushas were aware of Plaintiffs' reliance upon the PFS; and (5) Silverado defaulted on the agreements and Plaintiffs anticipate that they will be unable to collect on the debt, even after the conclusion of this lawsuit, because of the Galushas' misrepresentation. (¶¶ 78-85.)

The PFS identifies numerous assets, however, and missing from Plaintiffs' complaint are allegations specifying which assets were misrepresented and how. (Doc. 11-2 at 44-47.) Without this information the Court cannot assess whether Plaintiffs have plausibly alleged the remaining elements of a fraud claim. For this reason, Plaintiffs have not adequately alleged fraud and the Court will dismiss Count IV. *See Bly-Magee*, 246 F.3d at 1019.

### C. Leave to Amend

In their response brief, Plaintiffs argue that they should be granted leave to amend

if the Court determines, as it now has done, that Plaintiffs failed to adequately plead fraud. (Doc. 37 at 11.) Plaintiffs' request fails to comply with the Court's October 3, 2018 order, which in relevant part states:

> 1. Before the filing of any motion under Rule 12(b)(6) or 12(c), the parties must confer in good faith to determine whether the motion can be avoided. Defendant shall explain to Plaintiff the reasons why Defendant believes the complaint fails to state a claim for relief. The parties shall discuss whether any of the deficiencies identified by Defendant can be cured through an amended complaint. If the parties agree on this point, Plaintiff shall file an appropriate amended complaint in order to avoid the filing of an unnecessary motion to dismiss.
>
> 2. *Notwithstanding Plaintiff's belief that the complaint is sufficient to state a claim for relief, or Defendant's belief that the complaint is not curable, if Plaintiff believes that an amendment can cure or address some or all of the purported deficiencies identified by Defendant, Plaintiff is strongly encouraged to file an amended complaint containing all further allegations Plaintiff could make before Defendant files a motion to dismiss or for judgment on the pleadings. This would avoid the need for Plaintiff to seek leave to amend should the Court determine that the motion to dismiss or for judgment on the pleadings is well taken.*
>
> 3. *As an alternative to the procedure outlined in paragraph 2, if Defendant files a motion under Rule 12(b)(6) or 12(c) notwithstanding Plaintiff's belief that further amendment of the complaint can cure the alleged defect(s), Plaintiff must submit, no later than the time Plaintiff files a response to the motion, a proposed amended complaint that complies with LRCiv 15.1(a) and contains all further allegations Plaintiff could make. In the event a motion to dismiss or for judgment on the pleadings is granted in any part, no leave to amend the complaint will be granted beyond what is offered in the proposed amended complaint.*

(Doc. 17 (emphasis added).) The point of paragraph 2 is to encourage a plaintiff, when faced with the prospect of an unavoidable motion to dismiss, to essentially put all his cards on the table so that the parties need brief and the Court need resolve only one motion to dismiss. If a plaintiff declines to do so, paragraph 3 is designed to ensure that a request for leave to amend complies with the Local Rules and to provide a defendant and the Court with the opportunity to assess whether the amendment would be futile.

Here, Plaintiffs did not choose the procedure in paragraph 2, but also failed to comply with the alternative procedure in paragraph 3. As a result, their request for leave

to amend fails to comply with LRCiv 15.1 because they have not lodged a proposed amended pleading that indicates in what respect it differs from the original. Also absent from Plaintiffs' motion is any explanation for their failure to abide by the Local Rules and the Court's order.

The consequences of this failure are readily apparent. The Galushas' motion to dismiss includes arguments that Plaintiffs cannot assert any plausible fraud claim based on the PFS because no representations therein could have been material to Plaintiffs' decision-making or caused Plaintiffs injury, and because Plaintiffs did not and could not reasonably have relied on any such information. But, as previously explained, without knowing what specific representations form the basis of Plaintiffs' fraud claim, the Court cannot grapple with these arguments in any concrete way. These arguments might inform the Court's inquiry into whether further amendment would be futile, but Plaintiffs have not offered an amended pleading, so the Court still is left unable to concretely grapple with the Galushas' arguments.

Accordingly, Plaintiffs' request for leave to amend is denied without prejudice because it fails to comply with the Court's October 3, 2018 order or with LRCiv 15.1. If Plaintiffs want to resurrect their fraud claim, they may file a motion for leave to amend that complies with LRCiv 15.1 within fourteen days of the date of this order. The motion should include an explanation for why a proposed amended pleading could not have been lodged with the Court sooner.

**D. Attorneys' Fees**

Lastly, the Galushas seek an award of their reasonable attorneys' fees pursuant to A.R.S. §12-341.01(A). (Doc. 32 at 15.) The Galushas' request is denied without prejudice because it does not comply with LRCiv 54.2.

//
//
//
//

**IT IS ORDERED** that the Galushas' motion to dismiss Count IV-Fraud (Doc. 32) is **GRANTED** as explained herein. Count IV of the complaint is dismissed. If they so choose, Plaintiffs may file a motion for leave to amend that complies with LRCiv 15.1 within fourteen days of the date of this order.

Dated this 15th day of August, 2019.

Douglas L. Rayes
United States District Judge